UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID COLLETTI | No. 15 CR 260<br><br>Judge Jorge L. Alonso |

### **DEFENDANT DAVID COLLETTI'S SENTENCING MEMORANDUM**

Defendant David Colletti ("David"), by his attorneys, Murphy Law Group, LLC, pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3553 (a), and Local Criminal Rule 32.1(g), respectfully submits the following response to the proposed guideline calculations contained in the presentence investigation report and reasons for the court to impose a sentence below the guidelines as his sentencing memorandum.

### **INTRODUCTION**

David is an ideal candidate for a sentence below the minimum guidelines for this offense. David is in humble agreement with the Presentencing Investigation Report filed on January 8,, 2019, in that his extensive cooperation and assistance with the investigation of this offense should be given significant weight in determining an appropriate sentence. By requesting this departure from the minimum sentencing guidelines, David does not seek to discount the gravity of his offense, nor does he seek to avoid an appropriate punishment. The United States Attorneys Office and the Federal Bureau of Investigation have recognized David's great efforts to assist and cooperate with the investigation of this offense and to fully account for his wrongful actions. David asks that these acknowledged efforts are further recognized by this Court and taken into full consideration when the Court determines David's sentence.

1

From the outset, David promptly and wholeheartedly accepted full responsibility for his actions. Thereafter, David helped to minimize the expense of resources by the government, this Court, and MillerCoors in investigating and prosecuting this matter. Further, David is supported by his loving family, a community for which he regularly volunteers his time, and several close friends. David respectfully requests that this Court enter a sentence below the minimum guidelines for his offense level, as recommended by the Presentencing Investigation Report filed by Senior Probation Officer Michael Alper.

## BACKGROUND

### I. MILLERCOORS INVOICING SCHEME

From 2003 until 2013, David was an employee of MillerCoors, which brewed and sold beer across the United States.[1] From 2008 until 2013, David was the Vice-President of On-Premise National Accounts at MillerCoors, which oversaw the accounts of customers that sold and served beer on premises, such as bars and restaurants. David's responsibilities included overseeing marketing, promotion, and the sale of beer relating to these accounts, and reviewed and approved certain estimates and invoices submitted by 3rd party vendors, which provided marketing services to MillerCoors.

Beginning in 2003, David devised a scheme to falsely bill MillerCoors for specific events and/or promotions that did not occur as billed or at inflated costs. David was assisted by 3rd party vendors in preparing and submitting false estimates and invoices to MillerCoors, which David would approve knowing that they were false. MillerCoors would make payments for services that

---

[1] The factual background regarding the MillerCoors Invoicing Scheme as it is set forth here is consistent with that stated in David Colletti's Plea Agreement as it was entered on May 4, 2016.

2

it did not receive, which resulted in over $7 million in payments from MillerCoors from 2003 to 2013 as a result of the fraudulent estimates and invoices.

David, along with Roderick Groetzinger, Andrew Vallozzi, James Rittenberg, Scott Darst, Thomas Longhi, Francis Buonauro, Jr., Maryann Rozenberg and others, submitted false estimates and invoices on behalf of entities which purported to provide marketing services to MillerCoors. The entities used to issue these invoices included Beverage Industry Marketing, Services, Inc., Beverage Industry Marketing Services, LLC, Rave Media, Events Marketing Network LLC, Rare Beverages (referred to collectively as BIMS); AVA Advertising, Inc., AVA Marketing and Communications, LLC, Food and Beverage Network, Inc. (referred to collectively as AVA); Prime Promotions, Inc.; P&D Marketing, Inc.; Longhi Golf Operations; F&B Marketing; and Golden Logistics, d/b/a Golden Events and Promotions. David knew some of these entities were created solely to submit false estimates and invoices in order to obtain payments from MillerCoors. David personally assisted Rozenberg in incorporating Golden Logistics for this purpose.

David instructed Groetzinger, Vallozzi, Rittenberg, Darst, Longhi, Buonauro, and Rozenberg about the appropriate false information to include in the estimates and invoices to make them appear legitimate, including false dates, locations, and costs associated with fictitious events. David instructed others to inflate the costs associated with certain events or services listed on the estimates and invoices. On occasion, Rozenberg assisted David in preparing the false invoices on behalf of others. David sometimes personally delivered the false estimates and invoices, either physically or electronically, to MillerCoors and knowingly approved false estimates and invoices for payment during his employment. After the payments were issued by MillerCoors to the various entities involved in the scheme, David arranged for Groetzinger, Vallozzi, Rittenberg, Darst, Longhi, and Buonauro to provide David with a share of the proceeds in various forms, including

cash, funds transfers, payments on investments and debts, golf and hunting trips, and collectible firearms. On occasion, David used an entity named DAC Management to obtain the proceeds and conceal it from MillerCoors and others.

Total, David submitted and caused to be submitted at least 200 false estimates and invoices to MillerCoors, resulting in payments of approximately $8,658,302 to 15 different third party vendors controlled by Groetzinger, Vallozzi, Rittenberg, Darst, Longhi, Buonauro, and Rozenberg.

## II. DAVID COLLETTI'S PERSONAL BACKGROUND

The factual background for the offense, David's role in the offense, and his personal situation provides the context for the Court to apply the federal sentencing legal framework.

### a. FAMILY

David married Pamala Reid on July 31, 1982. Together, they have two children: Anthony Colletti, who is 33 years old and lives in Jersey City, New Jersey, and Angela Alioto, who is 29 years old and lives in Waukesha, Wisconsin with her husband and children. Pamala has not been employed since before Anthony's birth, and David was the primary provider for their family. David and Pamala have a strong and devoted marriage rooted in their shared faith. David maintains good relationships with his children, speaking with them on a daily basis. David has a vibrant and expansive network of support from friends and family members who hold him in high regard despite their knowledge of the offense, as memorialized in the collection of support letters included with this memorandum. *Group Exhibit A*. David is regarded by his friends and family as a mentor; a man of faith and great character; a wonderful son, husband, friend, father, grandfather and godfather; a trustworthy confidante; and most importantly, a man worthy of a chance for redemption.

### b. MEDICAL

David is 60 years old and suffers from high blood pressure, high cholesterol, diabetes, early kidney failure, acromioclavicular joint arthritis, idiopathic hypersomnia and sleep apnea.

### c. COMMUNITY INVOLVEMENT

David and Pamala are active members and supporters of Wellspring Church. They volunteer every Saturday at the 4:30 p.m. service: they arrive early to organize the area where the service will take place; Dave greets members and guest of the church at the outside door; Pamala greets members and guests as a host at the inside door, providing handouts and helping with seating; David and Pamala both usher during the offering and assist with the Salvation portion of the service; and after the service, David and Pamala help out with preparations for the next service.

David and Pamala recently became involved with the "Meet Me in the Street" ministry, which includes preparing food and delivering it to feed those in need in their community. They also donate clothing and household items to Angel's Attic, the proceeds of which are reinvested in the community.

### III. SUMMARY OF THE GUIDELINE CALCULATIONS

The base offense level for a violation of 18 U.S.C. § 1343 is 7, pursuant to USSG §2B1.1(a)(1). Doc. No. 300, Presentence Investigation Report, ¶ 30. With the increases from the loss amount and other enhancements and reductions, the total offense level is 30.

### a. LOSS AMOUNT CALCULATION

The base offense level is increased by 18 levels, pursuant to Guideline § 2B1.1(b)(J), because the loss was more than $3,500,000, but less than $9,500,000. Doc. No. 300, ¶ 31.

    **b. OTHER ENHANCEMENTS:**

        **i. SOPHISTICATED MEANS U.S.S.G § 2B1.1(B)(10)(C)**

Per the Presentence Investigation Report, the offense level is increased two levels as it involved sophisticated means. Doc. No. 300, ¶ 32. David assisted in the preparation of false invoices and estimates, personally assisted Rozenberg in incorporating Golden Logistics for a fraudulent purpose, and used his own company, DAC Management, to obtain and conceal the ill-gotten funds.

        **ii. ORGANIZER OF CRIMINAL ACTIVITY INVOLVING 5 OR MORE PARTICIPANTS U.S.S.G § 3B1.1(A)**

Per the Presentence Investigation Report, the offense level is increased four levels, because David was the organizer or leader of a criminal activity that involved 5 or more participants. Doc. No. 300, ¶ 35.

        **iii. POSITION OF TRUST U.S.S.G § 3B1.3**

Per the Presentence Investigation Report, the offense level is increased by two levels because David abused a position of trust in a manner that significantly facilitated the commission or concealment of the offense. Doc. No. 300, ¶ 34. David was in a management position as Vice-President of On-Premises Accounts, and abused his fiduciary duty to MillerCoors.

    **c. REDUCTIONS**

Per the Presentence Investigation Report, the offense level is decreased by two levels, because David has demonstrated acceptance of responsibility for the offense pursuant to U.S.S.G. § 3E1.1(a). Doc. No. 300, ¶ 39.

Per the Presentence Investigation Report, the offense level is decreased by one level pursuant to U.S.S.G. § 3E1.1(b), because David assisted authorities in investigating and

prosecuting David's own misconduct by timely notifying the authorities of his intention to enter a guilty plea. Doc. No. 300, ¶ 40.

## II. COURT SHOULD IMPOSE A BELOW-GUIDELINES SENTENCE

The Court should endorse the findings of the United States Probation Office and issue a below guidelines sentence. Senior United States Probation Officer Michael Alper advised in his Sentencing Recommendation that while 66% of the low-end of the guideline sentencing range for David would be 64 months imprisonment, a sentence of 30 month is appropriate based on all aggravating and mitigating factors. It was Probation Officer Alper's stated position that "such a sentence is sufficient, but not greater than necessary, to meet the sentencing goals of 18 U.S.C. § 3553(a)."

### a. DAVID'S COOPERATION

The most compelling reason that the Court should impose a below-guideline sentence is David's acceptance of responsibility and extensive cooperation. Section 3553(e) provides that "the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense… Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code." 18 U.S.C. § 3553.

The Guidelines state that when determining the appropriate reduction, the court may consider factors such as the usefulness of the defendant's assistance, the reliability of the information he has provided, the nature and extent of his assistance, the risk of injury the defendant faced from assisting the government, and the timeliness of his assistance. U.S.S.G. § 5K1.1.

David's cooperation has been substantial from the start of the investigation. He has provided substantial assistance to the government in their investigation, and Special Agent Miller even stated that David "gave [them] everything and everyone" with regard to the offense. Doc. No. 300, ¶ 26. Special Agent Miller also characterized David's cooperation as "fully truthful," and that he "fell on the sword," in accepting responsibility for his actions. Doc. No. 300, ¶ 26.

David has clearly recognized the deep error of his actions; and has taken significant steps to assist the government in pursuing the other bad actors in this scheme. Without David's assistance, the government likely would have incurred several hundreds of thousands, if not millions, in investigating and prosecuting this matter to conclusion as to each of the defendants. Further, without David's cooperation, MillerCoors would have incurred significant costs to undergo a forensic accounting to determine the amount of the loss and conduct an internal investigation to determine which 3rd party vendor invoices were fraudulent. This assistance is the exact nature of behavior that warrants a sentence significantly below guidelines.

### b. SENTENCES ASSIGNED TO CO-DEFENDANTS

Of the other 7 offenders involved in the scheme, three have received imprisonment (Rittenberg, Vallozzi, and Groetzinger), three received home confinement (Buonaro, Darst, and Longhi), and one received probation (Rozenberg).

Most instructive for comparison is Groetzinger, who was sentenced on September 7, 2018 to 18 months of imprisonment, 18 months of supervised release, and $1,935,989.00 in restitution. Sentencing enhancements were applied to Groetzinger's portion of the offense, including (i) 16 levels pursuant to § 2B1.1(b)(1)(I) because the loss was more than $1,500,000 but less than $3,500,000; and (ii) 2 levels pursuant to § 2B1.1(B)(10)(C) for the use of sophisticated means. The anticipated offense level in the Plea Agreement for Groetzinger was 22, with anticipated

8

advisory sentencing guidelines range of 41 to 51 months' imprisonment. Groetzinger was determined most culpable of the defendants after David, and contributed substantially to the planning and carrying out of the scheme. Groetzinger did not contribute to the government's investigation, and carries a prior criminal history.

In fact, while Groetzinger entered into a Plea Agreement, he failed to accept full culpability for his actions and insisted in his sentencing memorandum that he had no knowledge of and no participation in the broader scheme. Groetzinger further pointed to his personal and medical history to mitigate the applicable sentencing factors.

The government's response to Groetzinger's Objections to Presentencing Memorandum Guideline Calculation disagreed with the Probation's calculation of Groetzinger's total offense level as 20, particularly because the government believed that Groetzinger should not receive a 3-point reduction for acceptance of responsibility. Doc. No. 258, p. 1. The government specifically cited to the reliability of David's testimony as compared to Groetzinger's involvement and knowledge of the entire scope of the fraudulent scheme. Doc. No. 258, p. 4-5. Further, the government noted that Groetzinger frivolously contested the government's loss amount, attempted to shift all of the blame to David despite Groetzinger's guilty plea, and completely undercut Groetzinger's purported acceptance of responsibility. Doc. 257, p. 14. Total the government's recommendation as to Groetzinger's sentencing range was 70 to 87 months imprisonment with an offense level of 25. Doc. No. 258, p. 2. As stated above, Groetzinger was ultimately sentenced on September 7, 2019 to 18 months imprisonment, 18 months supervised release, and $1,935,989.00 in restitution.

When compared to the second-most culpable defendant in this scheme, David's cooperation and full acceptance of responsibility for his actions stands out. David did everything

possible to account for the wrongfulness of his role in the scheme. Not only that, David's cooperation was crucial to ensuring that each of his co-defendants was likewise held to account. From the start, David has accepted responsibility for his action and has worked diligently to make amends.

David stands by his guilty plea asking only that his sentence reflect the below-guidelines sentences granted to each of the co-defendants—even those who failed to fully accept responsibility. David understands that the 30-month recommendation of Probation Officer Alper is patently reasonable, and respectfully requests a below-minimum sentence as such.

### III. CONCLUSION

The Court should impose a sentence on David that is significantly below the guidelines, as was recommended in the Presentence Investigation Report and Sentencing Recommendation of Probation Officer Alper. When the factors set forth in § 3553(a) are applied to David's case, a below-minimum sentence is warranted. David is not a risk to the public, nor will this Court ever again find him in violation of the law. David took extraordinary measures to account for his bad acts and to expeditiously advance the government's investigation of these matters. David's extensive cooperation alone shows his great respect for the law and his intention to make amends for this offense. David has further shown since the offense his great devotion of time and energy to not only his supportive family and friends, but to the community in which he resides.

Taking all of these factors into consideration, the Court should impose a below-minimum sentence consistent with the recommendation of Senior Probation Officer Michael Alper.

Respectfully submitted,
DAVID COLLETTI

By: /s/ Eugene E. Murphy, Jr.

                                      His Attorney

Eugene E. Murphy, Jr. (ARDC No. 6198863)
MURPHY LAW GROUP, LLC
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
312-202-3200
gmurphy@mhlitigation.com